HEARD NOVEMBER TERM, 1878.

CASE No. 721.

JAMES A. LANIER, TRUSTEE, ET AL., v. JAMES B. GRIFFIN, GUARDIAN, ET AL.

1. A suit for foreclosure of a mortgage, given by guardian, as additional security for the use of his ward, is no bar to an action for an accounting against the guardian and the sureties on his bond.

2. The demand of a creditor of testator against the legatee, who has received his legacy, leaving a debt of the testator unpaid without available assets for its payment, is, in equity, in the nature of an action for money had and received, and the statute of limitations is applied in the same manner as to simple contract debts.

3. The estate of a deceased surety on a guardianship bond was duly settled up in 1858, without knowledge by executors or others in interest of this liability. The ward married in 1866, and by ante-nuptial settlement her property was assigned to a trustee; in 1867 she attained her majority; in 1868, an action was commenced by the trustee and herself, against executors, legatees and devisees of the surety, demanding payment by them of her claim. *Held,* that the action was not barred as against any of them by the statute of limitations. *Cases reviewed.*

4. *Held further,* that the legatees and devisees were liable to the ward to the extent of assets received, but that no personal liability attached to the executors.

5. *Held further,* that the legacies were liable to respond before the lands specifically devised could be applied, and that the decree should have established the liability of all the legatees and devisees *inter sese* to contribution.

6. A decree will not be reversed for defects purely technical; as where a defendant executor is held liable as legatee under facts charged and admitted, although not named as a party in his individual character.

7.  Lands *bona fide* alienated by devisee before suit brought, cannot be recovered by creditor of testator, but an unpaid balance of the purchase money due to devisee is an asset, which may be reached, after the remedy against the legatees is exhausted.
8.  The lands so alienated are not liable to the creditor for such unpaid balance of the purchase money, when under no specific lien therefor to the devisee.
9.  Where a widow consents to an order for sale of land of which her husband died seized, the amount of the sale will be the measure of her dower.

Before CARPENTER, J., at Edgefield, August, 1876.

This action was commenced by bill in the court of equity for Edgefield district, in April, 1868, by James A. Lanier, trustee under marriage settlement, Margaret Cornelia Brunson (formerly Hollingsworth) and Robert D. Brunson, her husband, against James B. Griffin, her guardian, Julius Day, a surety on the guardianship bond, John H. Hollingsworth and John H. Walker, executors of Diomede F. Hollingsworth, deceased, who was also a surety on the bond, and also against the legatees and devisees of said D. F. Hollingsworth, and the alienees of the devisees.

It will be unnecessary to state any facts, as they are fully set out in the Circuit decree; except that it is deemed proper to report all of the testimony which bears upon the mortgage given by the guardian for the use of his ward, in 1865.

*Z. W. Carlisle.*—Witness was the former commissioner in equity for Edgefield district. * * * [A mortgage was shown witness]—It was given December 26th, 1865; it was given at the instance of James B. Griffin himself; he gave it to secure that much of his property for the benefit of his ward; so far as witness knows, none of the plaintiffs in this action had any agency in procuring the mortgage; the land was sold under a decree of foreclosure. * * * The lands sold under decree of foreclosure brought $3800.

*John H. Hollingsworth.*—Witness had no agency in procuring the mortgage; before James B. Griffin left this country, witness told him that he ought to make some arrangement to secure his ward's estate; witness was prompted to do so, by the interest he felt in the ward of James B. Griffin.

There was also testimony to show that the executors of D. F. Hollingsworth made public advertisement, calling upon all creditors of their testator's estate to present and establish their demands. That the claim of Mrs. Brunson, then Cornelia Hollingsworth, was not presented, and that the executors had no knowledge that their testator was a surety on the bond of James B. Griffin, as guardian, until 1868. This testimony was not contradicted.

The Circuit decree is as follows: '

John Hollingsworth, Diomede F. Hollingsworth and Mansfield E. Hollingsworth, were brothers, living near the village of Edgefield, each the owner of considerable property. Eliza Ann Walker, a sister, had children—John H. Walker, Caroline E. W. Freeman, A. Spann Walker, Herbert W. Walker, Oliphant P. Walker and Milton S. Walker.

Mansfield E. Hollingsworth died in the year of our Lord 1853, intestate, and Diomede F. Hollingsworth became the administrator of his estate.

Cornelia Hollingsworth, daughter of M. E. Hollingsworth, was an heir-at-law and distributee. Upon the settlement of M. E. Hollingworth's estate, James B. Griffin, a defendant, whose sister D. F. Hollingsworth had married, became the guardian of M. C. Hollingsworth. He gave the usual guardianship bond, bearing date the 24th day of November, A. D. 1854, executed by himself, D. F. Hollingsworth and Julius Day, to A. Simpkins, commissioner in equity, and his successors, in the penalty of $20,000. James B. Griffin received in A. D. 1854, a small part of his ward's estate, the greater part in 1855, after payment of his ward's expenses, which were comparatively small. The money received, with accumulation of interest, amounted, on the 1st of January, A. D. 1875, to the sum of $22,173.31. There seems to be no question as to the amount of indebtedness. M. C. Hollingsworth (now Brunson) the plaintiff in interest, was born on the 20th day of August, A. D. 1846, and after the second marriage of her mother lived with her step-father at Abbeville. As a fact she knew nothing of the management of her estate, and for many years never saw her guardian. On the 10th day of August, A. D. 1866, she was married to Robert D. Brunson, of Edge-

field. An ante-nuptial settlement of her property was executed, of which her step-father, Thomas Thomson, was the trustee after the marriage, under a power contained in the settlement. The office or duty of the trustee was transferred to James A. Lanier. Suit was commenced on the 17th day of April, A. D. 1868, by the trustee, James A. Lanier, R. D. Brunson and his wife, M. Cornelia, for an account of her estate, for settlement and relief. Two of the obligators to the guardianship bond are living—the guardian, who is now in Texas, and Julius Day, in Edgefield county. The question as to their liability is free from difficulty. The points of chief litigation arise from the death of D. F. Hollingsworth, and the disposition made of his estate. D. F. Hollingsworth died in February, A. D. 1857, leaving a will, of which he appointed his brother, John H. Hollingsworth, and nephew, John H. Walker, the executors. The testator gave to his wife, Eliza Ann, the homestead tract of land, the carriage and horses, the household and kitchen furniture, over and above one-half of his estate. This devise and these specific legacies were not appraised, and as devisee and legatee, she received the property under the will. The proof was that when the widow, Eliza Ann, received the carriage and horses they were worth $1000; the household and kitchen furniture was worth $2000; that she sold a part of the homestead to E. Mims for $800; after her intermarriage with William H. Harrington she sold to P. A. Eichelberger, on the 8th day of January, A. D. 1860, the remainder of the homestead for the sum of $6000. The amount of these sums is $9800. The executors proceeded to convert the estate of their testator into money. They sold the tract of land on waters of Horns creek to John C. Porter, for the sum of $17,450, and made a deed to him of the same, bearing date the 18th day of December, A. D. 1857; John C. Porter, in A. D. 1867, sold the land to E. J. Miller and W. H. H. Butler, and these vendees are made defendants in this suit.

The value of the estate of D. F. Hollingsworth (omitting the value received by his wife as above) was, on the 15th day of December, A. D. 1858, the sum of $63,057.14. Of this sum the widow received in money and personal property taken at appraisement one-half, namely, the sum of $31,528.57; the other half,

$31,528.57, was divided—one-fourth to John H. Hollingsworth, namely, the sum of $7882.14, which, as executor, he retained in his hands; the three-fourths of the one-half, namely, the sum of $23,646.43, was divided among the six children of Mrs. Eliza Ann Walker above named, giving to each the sum of $3941.07.

Oliphant P. Walker died during the war, and after payment had been made by the executors to the legatees or their guardians, his heirs and distributees, (his mother being one of the number,) have become or are entitled to his part as above.

James B. Griffin, in A. D. 1866, made preparations to remove to Texas, and before his removal he gave a mortgage of certain lands to Z. W. Carwile, then commissioner in equity, for the plaintiff, M. C. Brunson's, use. These lands were afterwards sold, under decree of foreclosure, for the sum of $3800. The proceeds of this sale should be applied as a credit on the amount reported by the referee as due the plaintiff. The guardian and Julius Day both filed answers, insisting that the taking of the mortgage discharged them from liability.

The court could not take this view of the transaction, and is of opinion that judgment must go against these obligators for the whole amount due the plaintiff, M. C. Brunson.

The devisees and legatees under the will of D. F. Hollingsworth are liable to plaintiff for the amount that each received from the estate of D. F. Hollingsworth, testator.

Eliza Ann Harrington received, in property and cash, the sum of $41,328, and, as against her, the plaintiff should have a decree for the whole sum due her, less the credit of the foreclosure sale against John H. Hollingsworth. There should be a decree for the sum of $7883.04, with interest on this sum from the 17th day of April, A. D. 1868, the time of the commencement of this suit.

Against three of the legatees, children of Mrs. Walker, viz., John H. Walker, Caroline E. W. Freeman (now Williams) and A. Spann Walker, there should be a decree for the sum received by them respectively, namely, the sum of $3941, with interest from the 17th day of April, A. D. 1868.

It appears, from the report of the referee, that the sums to which three of the children of Mrs. Walker were entitled as

legatees were paid to their guardians. How much in fact was realized by those who were minors does not appear; the sums with which they should be charged may depend on facts not disclosed to the court.

It appears, from the pleadings and testimony, that Eliza A. Harrington received payment in full for the parcel of homestead sold to E. Mims. She received payment in part for the balance of homestead sold. P. A. Eichelberger. Payment was arrested on the part of Eichelberger by the notice of the plaintiffs' claim. Said Eichelberger made answer, and died pending suit, leaving a widow and child, who, being parties, have adopted his answer in substance.

The referee reported the testimony of Mrs. M. Eichelberger as to a conversation or agreement which P. A. Eichelberger said he had with W. H. Harrington; from that it appears that the sum $1800 was to be paid in full of balance due on land. The statement is brief and not minute. P. A. Eichelberger when living, and since his death his heirs-at-law, have had the use and occupation of the premises. The vendee and his heirs have been undisturbed, and their title and rights of possession not disputed. It would be no more than equitable that interest should be allowed on the balance due, at least from the commencement of the suit.

It appears, however, that the estate of P. A. Eichelberger is insolvent, and that M. Eichelberger's right of dower has accrued in the premises. She is therefore entitled thereto as provided by law. Subject to this right of dower, the court is of the opinion that the unpaid purchase money should be applied to plaintiffs' debt. The plaintiffs' claim reaches what can be identified as once pertaining to the estate of D. F. Hollingsworth. His widow took as a volunteer, and her equity must yield to the plaintiffs' superior and older right.

The sale of land by the executors of D. F. Hollingsworth to John C. Porter did not exceed the power vested in them, nor was the vendee in such case bound to see to the application of purchase money.

The court finds the following facts:

1st. That James B. Griffin as guardian, Diomede F. Hollings-

worth and Julius Day, executed to A. Simpkins, commissioner in equity, a bond for the guardianship of M. C. Hollingsworth, a minor, as set forth in the proceedings, in the penalty of $20,000.

2. That said James B. Griffin received as such guardian, during the minor's infancy and at an early period of time, large sums of money, which with interest, amounted on the 1st day of January, A. D. 1875, to the sum of $22,173.31.

3. That the sum of $3800 was realized in A. D. 186 , from the sale of mortgage premises to Z. W. Carwile, for the use of M. C. Hollingsworth.

4. That except the above there have been no payments or credits allowed on said bond.

5. That Diomede F. Hollingsworth, one of the obligators to said bond, departed this life in February, A. D. 1857, leaving in force his last will and testament, and thereby disposing of a large estate.

6. That he devised and bequeathed to his wife, Eliza A., a large property, of which the value was, on the 15th day of December, A. D. 1858, the sum of $41,328, all of which she received.

7. That the testator bequeathed to John H. Hollingsworth, one-fourth of one-half of his estate (less certain bequests and devises to his wife,) the value of which on the 15th of December, A. D. 1858, was the sum of $7882.04, which the said John H. Hollingsworth received and retained in his hands.

8. That said testator gave and bequeathed to John H. Walker, Caroline E. W. Freeman, A. Spann Walker, Herbert W. Walker, Oliphant P. Walker and Milton S. Walker, children of his sister, Eliza A. Walker, in like manner as above, three-fourths of one-half of his estate, which, divided among them, would give to each one the sum of $3941.07, on the 10th day of December, A. D. 1858.

9. That John H. Walker, Caroline E. W. Freeman and A. Spann Walker, each received the sum of $3941.07 on the 15th day of December, A. D. 1858.

10. That John F. Burns, guardian of Milton Walker, received the said share of his ward on the 19th day of October, A. D. 1858; and that Charles Hammond, the guardian of Herbert W. Walker

and Oliphant P. Walker, received the like share for each of his wards at the same time.

11. That the sums of money which were actually received by said wards of their bequests are unknown to the court.

12. That the executors of the will of D. F. Hollingsworth did sell the land on the waters of Horns creek to John C. Porter, and that he sold the same to E. J. Miller and W. H. H. Butler.

13. That Eliza A. Hollingsworth (widow) sold a parcel of the homestead to E. Mims, and that E. Mims sold the same to J. F. Kenney.

14. That she (Mrs. E. A. Harrington) sold the balance of the homestead to P. A. Eichelberger in 1860; that part of the purchase money was paid by P. A. Eichelberger, and the balance, to wit, $1800, remains unpaid, with interest.

15. That P. A. Eichelberger has died pending this suit, leaving his widow, Margaret Eichelberger.

The court finds the following conclusions of law :

1. That Margaret C. Brunson is entitled to recover against the defendants, James B. Griffin and Julius Day, the whole sum due her, namely, the sum of $22,173.31, with interest on $10,297, less the sum of $3800, which will be the sum of $18,373.31, with interest on $10,297.67 from January 1st, 1875.

2. That said plaintiff is entitled to recover against the defendant, Eliza A. Harrington, the like sum of $18,373.31, with interest on $10,297.67 from the 1st day of January, 1875.

3. That said plaintiff is entitled to recover judgment against John H. Hollingsworth for the sum of $7882.14, with interest thereon from the 17th day of April, A. D. 1868.

4. That the plaintiff is entitled to recover judgment against John H. Walker for the sum of $3941.07, with interest thereon from the 17th of April, 1868.

5. That the plaintiff is entitled to a like recovery for the sum of money and interest against Caroline E. W. Freeman (now Williams.)

6. That the plaintiff is entitled to the same recovery against A. Spann Walker.

7. That the plaintiff is entitled to recover against the heirs-at-law and personal representatives of P. A. Eichelberger, deceased, the sum of $1800, with interest thereon from the 17th day of April, 1868, and have payment of the same from the sale of the homestead.

8. That Margaret Eichelberger is entitled to have her dower admeasured in the homestead.

9. That the bill or complaint should be dismissed as to John C. Porter, E. J. Miller and W. H. H. Butler, the vendees of the land on Horns creek; also as to John F. Kenney, the vendee of E. Mims, purchaser from the devisee.

*It is therefore ordered, adjudged and decreed,* That Margaret Cornelia Brunson, the plaintiff, do recover and have judgment against James B. Griffin for the sum of $18,373.31, with interest on the sum of $10,297.67 from the 1st day of January, A. D. 1875, and have leave to enter and docket her judgment therefor; and that the plaintiff recover the same sum and like interest against Julius Day, and have leave to enter and docket judgment therefor.

*It is also ordered, adjudged and decreed,* That plaintiff, M. C. Brunson, do recover and have judgment against Eliza A. Harrington for the like sum of $18,373.31, with interest on the sum of $10,297.67 from the 1st day of January, 1875. That said plaintiff recover and have her judgment against John H. Hollingsworth for the sum of $7882.04, with interest on said sum from the 17th day of April, 1868. That said plaintiff do recover and have judgment against John H. Walker, Caroline E. W. Williams and A. Spann Walker, each for the sum of $3941.07, with interest on these sums respectively from the 17th of April, 1868.

*Also ordered and decreed,* That the plaintiff recover and have her costs and disbursements against the said James B. Griffin, Julius Day, Eliza A. Harrington, John H. Hollingsworth, John H. Walker, Caroline E. W. Williams and A. Spann Walker.

*It is ordered and decreed,* That the plaintiffs bill or complaint be dismissed, with costs, against John C. Porter, E. J. Miller, W. H. H. Butler and J. F. Kenney.

*Also ordered and decreed,* That a writ for the admeasurement of dower to the widow of P. A. Eichelberger, viz., Margaret

Eichelberger, be issued by the clerk of the court according to law, and her dower laid off and admeasured, if the same can be done according to law without injury or injustice to one or more of the parties having an interest in the premises; and if said dower be actually admeasured and meted out to M. Eichelberger in realty, then the sheriff of Edgefield county is hereby ordered and directed to sell, at Edgefield C. H., on sale-day in December next, or on some convenient sale-day thereafter, at public outcry, after notice of such sale, according to law, of at least twenty-one days, to the highest bidder, the remainder after the estate assigned to the dowress for life, and all the residue of the land not embraced in the admeasurement of dower. The sale shall be one-half cash and one-half credit of twelve months from day of sale, interest at seven per cent., credit portion secured by bond and mortgage of the premises sold. If dower shall not be actually admeasured, the sheriff shall proceed to sell the whole of the homestead upon the terms and in the manner above ordered, and shall, within ten days after such sale, made in either way as above, return all the papers and money (his own costs excepted) to the clerk of the court, who shall pay one-sixth of the purchase money, when received and collected, to M. Eichelberger for her dower, and the sum of $1800, with interest from the 17th day of April, A. D. 1868.

The case came before the Supreme Court upon exceptions to this decree, taken by several of the defendants, as follows:

The defendants, Julius Day and John H. Hollingsworth, except—

1. To the decision and decree of his Honor R. B. Carpenter, judge of the fifth judicial circuit, herein, and especially to that portion of the decree which says that the question of the liability of Julius Day is free from difficulty, and that judgment must go against him for the whole amount due plaintiff, M. C. Brunson.

2. To that portion of the decree which says that the devisees and legatees under the will of D. F. Hollingsworth are liable to the plaintiff for the amount that was recovered from the estate of D. F. Hollingsworth, testator.

3. To so much of the conclusions of law as finds Margaret C. Brunson is entitled to recover against Julius Day.

4. To the third conclusion of law, that the plaintiff is entitled to recover against John H. Hollingsworth the sum of $7882.14, with interest from the 1st day of April, A. D. 1868, or any sum whatsoever.

5. To so much of said decree as orders, adjudges and decrees that Margaret Cornelia Brunson recover and have judgment against Julius Day for $18,373.31, with interest on $10,297.67 from the 1st day of January, A. D. 1875, and have leave to enter and docket her judgment therefor.

6. To so much of said decree as orders, adjudges and decrees that said plaintiff recover and have her judgment against John H. Hollingsworth for the sum of $7818.14, with interest from the 17th day of April, A. D. 1868.

7. To so much of said decree as orders and decrees that plaintiff have her costs and disbursements against Julius Day and John H. Hollingsworth.

8. That the decree is erroneous in charging John H. Hollingsworth individually with any liability whatever, he never having been made a party or been charged or any relief sought against him individually, but only made a party, charged and relief sought against him as executor; and in this, that said decree fails to find that John H. Hollingsworth, as executor of D. F. Hollingsworth, made a final settlement on the estate of his testator and received his legacy on the 19th day of October, A. D. 1858, from which time the statute of limitation, and the lapse of time in analogy thereto, ran in his favor, thereby barring all relief as against him.

Exceptions of Eliza A. Harrington, one of the defendants, to the judgment of his Honor R. B. Carpenter, the presiding judge, pronounced herein:

1. The said defendant excepts to so much of said judgment as holds the said defendant liable to any extent for the debts or liabilities of her testator, Diomede F. Hollingsworth, because his estate was duly and legally disposed of by final settlement

thereof, in the office of Ordinary for Edgefield county, when all the parties in interest were represented.

2. The said defendant excepts to so much of said judgment for the debts or liabilities of her said testator, because the said defendant's liabilities were barred by the statute of limitations.

3. The defendant excepts to so much of the said judgment as holds the lands of P. A. Eichelberger liable for the debts of the said testator, thereby denying the liability of the land of an alienee of a devisee for the debts of the testator.

4. That the said judgment is erroneous and incomplete, because there is no adjudication of the defendants' liability among themselves, and should be re-committed without prejudice for that purpose.

Please take notice that J. L. Addison, administrator *de bonis non* of the personal estate of Philip A. Eichelberger, deceased, and Margaret A. Eichelberger, widow of the said deceased, appeal from the judgment entered herein, September, 1876, on the grounds following :

1. That his Honor R. B. Carpenter erred in holding that the special devise of the tract of land to Mrs. Eliza A. Harrington, under the will of Diomede Hollingsworth, is liable to the payment of the claim of plaintiffs.

2. That he erred in not holding that all the legacies and remaining devises under said will should be exhausted before resort had to said special devise.

3. That he erred in finding as a fact in Paragraph 14 of his decree that the sum of $1800, and interest, or any other sum, by the estate of the said Philip A. Eichelberger as balance due on homestead of Mrs. Eliza A. Harrington—the testimony of Mrs. Margaret A. Eichelberger being too slight and general, as altogether inadmissible and illegal.

4. That he erred in Paragraph 7 of his conclusions of law in holding " that the plaintiffs are entitled to recover against the heirs-at-law and personal representatives of P. A. Eichelberger, deceased, the sum of $1800, with interest thereon from the 17th day of April, 1868, *and have payment of the same from the sale of the homestead.*"

5. That he erred in giving priority of lien on balance due on said homestead to plaintiffs, to the injury of the rights of the creditors of the said P. A. Eichelberger.

6. That he erred in directing the clerk to pay one-sixth of the proceeds of the sale of the said homestead to Margaret A. Eichelberger for dower, instead of one-sixth of the assessed value of said homestead at the time of the death of the said Philip A. Eichelberger.

I adopt the above grounds for my client.

M. L. BONHAM,
*Attorney for Walter Eichelberger.*

*Mr. J. A. Sheppard;* for J. H. Hollingsworth.

The executors having made due advertisement and then made settlement of their accounts, without knowledge of this liability, are discharged. 5 *Stat.* 106, § 27; *Gen. Stat.* 457, §§ 1, 2; *Bail. Eq.* 439; 2 *Bail.* 105; *Rice Eq.* 110; 5 *Sm. & M.* 651; 3 *Yerg.* 1; 3 *Hill* 165. And the executors being absolved from liability, the legatees are also. *Bail. Eq.* 439. Where there are provisos and saving clauses in a statute, all persons not excepted are affected by the provisions of the statute. Hence, this statute affects minors, particularly when represented by guardian. 12 *Wheat.* 438; 12 *Johns.* 290; 15 *Johns.* 391. When creditors fail to present their demands, executors are justified in paying legacies. *Rich. Eq.* 347; *Rice Eq. Cas.* 130.

This bond was payable to the commissioner, who is the administrative officer of the court, and, as such, a supervisor of guardians. 11 *Stat.* 112. The bond is payable to him, and the *sureties* are liable only on the bond. This is a legal claim; and is none the less so because action thereon may be brought in the court of equity. 1 *Story's Eq.* 425, 432, 438, 442. The commissioner alone may sue on the bond (11 *Stat.* 112), and, as a creditor, is affected by act of 1789. If executor is protected by failure of the creditor to present his demand, so is the legatee. *Rich. Eq. Cas.* 347; 2 *Hill Ch.* 466-7. The executors are protected by statute of limitations, running from time they made settlement of the estate. *Bail. Eq.* 198; 4 *Strob. Eq.* 196, 203; *Spears Eq.* 382; 2 *Hill* 522; 2 *Hill Ch.* 457, 496; 1 *McC. Ch.*

2 o

176 ; *Bail. Eq.* 437 ; *Rice Eq.* 385 ; 4 *Rich. Eq.* 101 ; 7 *Rich. Eq.* 411.

That the minor is barred, see 4 *Rich. Eq.* 61. That a guardian has the right to receive for his ward, results from principle decided in 2 *Hill Ch.* 284. See, too, 2 *Hill Ch.* 490 ; 3 *Pr. Wil.* 309 ; 12 *B. & B.* 75 ; 1 *Cox* 145 ; *Lewin on Trusts* 604.

The remedy against the executor, as such, is lost. See *Gen. Stat.* 457, and Circuit decree. The remedy on the bond, as such, has also been lost, especially against the legatees. See 10 *Rich. Eq.* 438. By parity of reasoning, the statute of limitations must be regarded *quoad* the executor and not *quoad* the creditor, and hence infancy of creditor is not to be considered.

A legatee, if liable at all, is only liable for his proportion of the claim, and is not to make good the insolvency of his co-legatees. 3 *Russ.* 130 ; 1 *Roper on Leg.* \*459 ; 1 *Desaus.* 112 ; *Dud. Eq.* 173. At any rate, there should be no interest. 2 *Hill Ch.* \*356, \*457 ; 1 *Hill Ch.* 101 ; 3 *Ves.* 32 ; 2 *Williams on Ex'rs* 1309 ; 2 *Atk.* 107 ; 3 *Atk.* 244.

*Mr. L. F. Youmans,* attorney-general, for J. H. Hollingsworth and Julius Day.

In addition to the points and authorities of Mr. Sheppard, the attorney-general contended that the foreclosure was a bar to this action. 5 *Coke* 61, *a;* 8 *Conn.* 71 ; 5 *Robinson's Prac.* 36–48 ; *Story Eq. Pl.* 736–743 ; 2 *Dan. Ch. Pr.* 721–727. Executors represent creditors who present their demands. 2 *Rich. Eq.* 154 ; *Rich. Eq. Cas.* 347 ; 1 *McC. Ch.* 43 ; 2 *Brev.* 312. Legatees are protected by statute of limitations. *Spears Eq.* 375 ; 10 *Rich. Eq.* 435. Even against infants. 3 *Strob. Eq.* 192 ; 10 *Rich. Eq.* 518. There is no privity between surety and ward. Formerly surety could not be made party to an action for accounting. 2 *McC. Ch.* 209. Now he can. *McM. Eq.* 445 and 488 ; but this is for the benefit of the surety. *Rich. Eq.* 127. The right to follow property in hands of legatee is a mere equity, and should not be inequitably enforced. 5 *Rich. Eq.* 169 ; laches often defeats remedies in less time than statute of limitations. 7 *Rich. Eq.* 260 ; 11 *Rich. Eq.* 31–39. Hollingsworth being released, the other surety, Day, becomes thereby released also. *Co. Litt.*

232; 6 *Ves.* 146; 1 *Atk.* 294; 2 *Salk.* 574; 4 *Ad. & El.* 675. Whether release be by deed or operation of law. 1 *Bos. & Pul.* 634. Hollingsworth is sued only as *executor*.

*Mr. H. W. Addison,* for Mrs. Eichelberger.

*Mr. M. L. Bonham,* for Walter Eichelberger.

*Mr. J. M. Baxter,* for Mrs. Harrington.

Plaintiffs must first establish liability of executors and then their insolvency. 1 *McC. Ch.* 325; 2 *McC. Ch.* 416; *Bail. Eq.* 439. Personalty is the primary fund for the payment of debts. *Bail. Eq.* 406. The bar of the statute as to the personalty will prevent resort to the devisees for the land. *Rich. Eq.* 240; 13 *Rich. Eq.* 99. And the land itself, having been alienated, is not liable. 6 *S. C.* 146.

*Messrs. M. W. Gary* and *Samuel McGowan,* for respondents.

April 19th, 1879. The opinion of the court was delivered by WILLARD, C. J. The facts of the case are sufficiently stated in the Circuit decree in order to understand the bearing of the exceptions to that decree. J. Day was one of the sureties for the guardian, J. B. Griffin, and J. H. Hollingsworth is the executor of the other surety, D. F. Hollingsworth. They except to so much of the decree as holds Day answerable as surety with D. F. Hollingsworth, and awards judgment for the whole amount found due from his principal to the trustee of the ward. The judgment against Day, as surviving surety, was properly allowed, unless there is force in the objection that such judgment is precluded by a former recovery in a previous suit brought by the plaintiffs to foreclose the mortgage given by the guardian as security, in part, for the amount of his indebtedness to his ward at the time he left the state. It is contended that that fact bars the present action against Day as surety on the bond. We do not see any ground for holding such foreclosure proceeding a bar to the present action. It was founded on the mortgage given by Griffin, and

not upon the guardian's bond or his general accountability, an entirely different cause of action. It does not appear that a general accounting by the guardian was had under it. How that judgment could be reached without an accounting by the guardian is a question that could only become important with reference to the validity of that judgment, which is not in question here. Its effect is determined by the fact that a general accounting was neither sought nor had. Day, as guardian's surety, was interested to have as much as possible realized from the Griffin mortgage, and the suit in that case was in harmony with the equities in the present suit, and, therefore, the sureties have no cause of complaint, and, certainly, no technical bar. Whether Day was a necessary or proper party to that suit cannot be questioned here. This exception should be overruled.

The next exception is to the finding of the decree that the devisees and legatees under the will of D. F. Hollingsworth are liable to the plaintiff for the amount that was received by them as such from the estate of their testator, one of the sureties on the guardian's bond. This exception is also raised by the appeal of Mrs. Harrington. J. H. Hollingsworth and Mrs. Harrington are the only persons standing in the relation of legatees who appeal from the decree as charging the plaintiff's debt against the assets of the estate of D. F. Hollingsworth in the hands of his legatees. Mrs. Harrington stands in the case in the additional character of specific devisee of realty; but the questions growing out of that fact will be considered under the objections raised by her appeal. The question that will be now examined relates to the liability of the legatees of D. F. Hollingsworth to respond to the amount of assets received by them in payment of their legacies. It is contended that the executors of D. F. Hollingsworth having settled the estate of their testator many years prior to the commencement of this suit, the statute of limitations, as applied to simple contract debts, is a bar to any suit against them by a creditor neglecting to present his demands in due time, and that this circumstance affords a reason why the plaintiffs should be held to be barred as against the legatees. It is true, that in the present case no ground appears for a decree against the executors of D. F. Hollingsworth. Had the plaintiffs sued them on

their legal liability as personal representatives of the testator, a plea of *plene administravit* could have been established by showing that they had paid out all the assets of the estate in due course of administration, by satisfying all creditors who came in and proved their debt on the usual notice, and distributing the balance.    *Walker* v. *Gill,* 2 *Bail.* 105.    In such an action, if the executor relied on the statute of limitations, he would have to show such a bar as would be appropriate to the nature of the plaintiff's demand, for the object of the bar would be to destroy the right of the plaintiffs to establish their debt as against the assets of their debtor, and not merely to shield the executor from personal liability.    If, however, the executor is directly pursued for his personal wrong, as in the case of a *devastavit,* he can interpose a bar personal to himself, such as the lapse of the ordinary time for barring actions on simple contract debts after final accounting and distribution.    But an action at law on the guardian's bond against the personal representatives is not subject to the statute bar.    *Mobley* v. *Cureton,* 2 *S. C.* 140.    Equity applies the statute of limitations to strictly legal rights brought within its jurisdiction in the same manner as the courts of law apply it.    *Van Blyn* v. *Vincent,* 1 *McC. Eq.* 310.    The demand of the creditor of the testator against a legatee, who has received his legacy, leaving debts of the testator unpaid, without available assets for its payment, is, in equity, in the nature of an action for money had and received, and the statute of limitations is applied in the same manner as to simple contract debts.    *Brewster* v. *Dickinson,* 10 *Rich. Eq.* 435; *Buchan* v. *James, Spears Eq.* 375. In applying the bar the court looks to the time when the cause of action accrued to the plaintiff, and counts the statute time accordingly, allowing the same effect to disabilities that prevail at law.    In *McMullan* v. *Brown,* 2 *Hill Ch.* 457, the legatees had been in possession of their legacies from 1816 to 1817, and the bill which was brought by the creditor of the testator against the legatees was not filed until 1829.    It was held that the suit had been brought in due time, as the cause of action did not arise until judgment had been recovered against the executor, and a deficiency of assets established, so as to enable the legacies to be followed.    In that case the question whether the creditor was

barred as against the legatee was considered independently of the question whether such a suit by the executor would have been so barred. It is doubtless true that the equity of the creditor to go against the legatee is through the executor, who primarily has the right to call in assets commensurate with the rights of creditors to have such assets applied to their debts; and it would seem a natural inference that a bar that would affect the executor would equally affect the creditor who pursues his rights through the executor. But the executor may lose his recourse to the legatee by delay to prosecute or some act of wrong committed by him, without destroying the right of the creditor to pursue the legatees. In *Fripp* v. *Talbird*, 1 *Hill Ch.* 142, it is said "there is no doubt about the general rules that if an executor or administrator proves insolvent, creditors may follow the assets in the hands of a legatee or distributee, and compel them to refund, even although the executor may have retained sufficient assets to pay the debt, and wasted them." In such a case, if the executor was compelled to pay, he clearly could not go against the legatees to make good the assets wasted by him. Although the creditor has no original equity against the legatee, as standing in his own right, and holds only an equity derived from that of the executor, yet, under the authorities, it is necessary to conclude that it is an independent equity, for otherwise the creditor would be barred wherever the executor is barred, which, as we have seen, is not the case. Though derivative in its origin, yet that it is direct in its character, as between the creditor and the legatee, is clearly to be implied from the view presented in *Brewster* v. *Dickson*, 10 *Rich. Eq.* 435, defining it as in the nature of an action by the creditor against the legatee for money had and received to his use. Without an equitable priority between the creditor and the legatee, whether original or derived through some other equity, no foundation for the application of the principles of *indebitatus assumpsit* would exist. If the executor has assets, or their deficiency has been occasioned by his wrong, the creditor must go against him in the first instance, and exhaust his remedy, before he can go against the legatee, as was held in *McMullan* v. *Brown.* This shows that the creditor's right against the legatee does not depend on the co-operation of the executor, but that it is inde-

pendent even of any misconduct that the latter may have committed. If, then, the executor has improperly lost the right to recall legacies, by delay or otherwise, the creditor is not prejudiced thereby. It the present case, the complainant was enabled to go against the legatee with the executors, because it appeared that no assets existed in the hands of the executors, and no ground appeared for charging the executor personally with the debt, as in case of *devastavit*. We must, therefore, look to the plaintiff's cause of action to see whether this action was commenced in due time. The plaintiff, M. C. Brunson, who was the ward of Griffin, did not arrive at majority until 1867. She married in 1866, and the trust deed under which the plaintiff, Lanier, as trustee, claims, was executed in the last-named year. The action, the primary object of which was an accounting by or in behalf of the guardian, was brought in 1868, within four years after the execution of the trust deed and the appointment of a trustee, and within one year after the plaintiff, M. C. Brunson, attained majority. It is therefore clear that the action was commenced in due time after the statute commenced running on the removal of the disability of minority as it regards the ward and as it regards the title of the trustee within four years next after the cause of action accrued. The plaintiffs have established a bond debt against the personal representative of D. F. Hollingsworth, and have shown that there are no assets in the hands of such personal representative for the satisfaction of such debt, and no remedy available against the personal representative; also, that the legatees have received their legacies, thus entitling them to a decree calling upon the legatees to refund their legacies. *Newman* v. *Bartin*, 2 *Vern.* 205; *Miller* v. *Mitchell*, *Bail. Eq.* 437; *Fripp* v. *Talbird*, 1 *Hill Ch.* 142.

It is contended that the bill makes J. H. Hollingsworth a party defendant only as executor of D. F. Hollingsworth, and, therefore, so much of the decree as charges the said J. H. Hollingsworth as legatee is erroneous. The bill charges the fact that J. H. Hollingsworth was a legatee as well as executor, and prays an account on the part of the legatees of the estate of D. F. Hollingsworth. The defendant, J. H. Hollingsworth, in his answer, admits the fact of distribution according to the terms of the will,

and the decree is in accordance with these admissions. The objection is of a purely technical character, and does not appear to have been urged in objection to the proofs establishing the liability of J. H. Hollingsworth. It is, therefore, too late for advantage to be taken of such objection, if it ever had any force. Independent of the provisions of the code of procedure, objections that may be cured by amendment should be taken before decree. But the provisions of the code are applicable to the decree which was pronounced in 1876 (Section 465), and the decree cannot be reversed for any such technical defect. Section 197. It is not material to inquire whether any such alleged defect existed in the bill as originally filed, or in the amendment; J. H. Hollingsworth is in the same situation as the other legatees as it regards the bar of the statute of limitations. As executor he is not brought into liability by the decrees.

The appeal of Mrs. Harrington, will be next considered. The first and second exceptions taken by her have been disposed of so far as they relate to her rights as a legatee receiving her legacy, leaving unpaid debts of testator outstanding. Mrs. Harrington was, in addition to being a legatee, a specific devisee of certain lands of the testator. As it regards the realty specifically devised, the statute of limitations is inapplicable. The action against the devisee by the creditor of the testator is under the statute of 3 and 4 W. and M., and is upon the bonds of the ancestor, with which the devisee has privity by reason of assets devised. *Mobley* v. *Cureton*, 2 *S. C.* 140. The plaintiff might have sued Mrs. Harrington at law as devisee without joining the executor, and could have recovered to the extent of assets devised and actually received by her. *Vernon* v. *Valk*, 2 *Hill Ch.* 257. In equity the executor or administrator is a necessary party when assets can be reached that should be applied to the relief of the devisee, and the reason assigned is "that full justice may be done without resort to a second suit." *Vernon* v. *Valk*. In *Alexander* v. *Williams*, 1 *Hill* 522, it is held that in the case of a creditor seeking to subject legacies after assent by the executors, the remedy is in equity as against all the legatees for contribution. It is clear, therefore, that the decree is erroneous in not having adjusted the recovery so as to reach, in the first instance, assets

primarily applicable to the payment of the plaintiff's demand. Legacies are liable to respond before lands specifically devised can be applied. *Duncan* v. *Tobin, Dud.* 160. The decree, however, establishes an absolute liability against Mrs. Harrington to the extent of assets devised by her both as legatee and as devisee. This was clearly erroneous, as it permits the plaintiffs to go at once against her to the full extent of her possible ultimate liability without exhausting the remedy against legatees.

For the foregoing reasons the fourth exception of Mrs. Harrington, to the effect that this decree is erroneous and incomplete because there is no adjudication of the defendants' liability among themselves, is well taken. The decree does not pursue the legacies in the lands of all the legatees within the reach of the court in accordance with the bill, and in this respect fails to give the full measure of justice due as between the defendants. It appears by the decree that the guardians of three infant legatees received the shares of their wards, and that the sums that were actually received by said wards of their bequests are unknown to the court; no decree is made for contribution on account of such infants' legacies, although Milton and Herbert Walker, two of such infant legatees, are made parties to the bill, the remaining infant, Oliphant, appearing to have died before the suit was commenced. It is necessary, if not already done, that there should be a representation of the estates of these infants, and such proceedings had as to bring such estates into contribution *pro rata* with the other legatees.

It appears that part of the premises specifically devised were alienated by Mrs. Harrington to P. A. Eichelberger, and that the sum of $1800 and interest remained due on account of the purchase money in such alienation. The decree holds the personal representatives of Eichelberger, who is deceased, liable for the sum of $1800 and interest, and orders the sale of the lands specifically devised and thus alienated for its payment, making provision for the allowance to the widow of Eichelberger of dower out of said lands. The *bona fides* of the alienation is not impeached. Such alienation reduced the demand of the creditor of the testator to a money demand against the devisee for the value of the devised assets. No legal or equitable right to follow

the lands exists under the statute. The question then arises whether the claim for the purchase money due from the estate of Eichelberger can be regarded as assets of the estate of D. F. Hollingsworth, so as to be reached in the hands of Mrs. Harrington and enforced against the personal representatives of Eichelberger.

*D'Urphey* v. *Nelson,* 4 *McC.* 128. In this case it was held that, under the 5th Statute of George II., Chapter VII., "lands of the debtor are made liable for all his debts, and are made assets for satisfying the same in like manner as such estates are liable in England," and that "they are liable though devised by the debtor," and when alienated by the devisee or heir, he is answerable for their value. It is also held that "the lands of the debtor are made liable for all his debts, and are made assets for satisfying the same, in like manner as such estates are liable in England by specialty," and that "they are, liable though devised by the debtor," and when alienated by the devisee or heir he is answerable for their value. It is also held that "the lands of the debtor are made subject to like remedies for seizing and disposing thereof for his debts, in like manner as personal estates in the plantations are seized and disposed of for satisfaction of debts, that is to say they are made liable to be taken by a writ of *fi. fa.* in all cases when chattels are so liable and sold, &c., or to whatever other remedies chattels are liable to in the respective colonies of America. Being made liable in like manner as personal estates, the act cannot be construed to make any distinction between lands and personal chattels, but they must be construed as equally liable for satisfaction of debts and to be assets for that purpose in the hands of the personal representative of the debtor." The question in that case was whether such lands could be seized and sold under execution against the personal representatives of the debtor as against the heir entitled to them by descent, and it was held that they could be so seized and sold. Much discussion has arisen as to the limits of the doctrine of this case, but it has been conceded that the case must stand as a sound exposition of 5th George II., and, also, that it does not apply to the lands descended or devised where they have been *bona fide* alienated before suit brought by the heir or

devisee.    The features of that case that are still open for discussion have no bearing on the present question.    *Martin* v. *Latta,* 4 *McC.* 28 ; *Vernon* v. *Valk,* 2 *Hill Ch.* 257 ; *Jones* v. *Wightman,* 1 *Hill* 579 ; *Bird* v. *Howze, Spears Eq.* 250 ; *Gilliland* v. *Howell,* 1 *S. C.* 124.    It is clear that the doctrine of that case includes the proposition that such assets may be followed in equity in like cases in which personal assets could be followed, and subject to the same rules as it regards the remedy for such assets when they have become converted into some form different from that they originally possessed, but can be traced in such new form.    It must be contended that while the lands were in the hands of the devisee they were to be regarded as assets capable of being reached, as such, in equity by the personal representatives or by creditors of the testator.    There can be no doubt but that when the lands are alienated by the heir or devisee, the proceeds of their sales can be pursued in the hands of the heir or devisee as assets.    It would follow from familiar principles that a chose in action or an obligation held by the heir or devisee for the recovery of the purchase money of the lands devised and alienated, might, at the election of the creditor or personal representative of the testator, as the case might be, be held to represent the assets of the testator's estate, and be specifically pursued as such. That is the present case, for the plaintiffs seek to reach, specifically, the right of action possessed by Mrs. Harrington for the unpaid purchase money.    It is true, as already held, that such claim for the purchase money of the lands specifically devised takes the place of the lands themselves, and, as such, cannot be reached until the remedy against the legatees is exhausted.    The plaintiffs, therefore, cannot have an absolute decree as against the devisee, Mrs. Harrington, as to the demand for such purchase money remaining unpaid, but a contingent right for that purpose depending on the insufficiency of the funds derived from the legacies.    In this respect the decree is erroneous, and must be modified accordingly.    But in the event that it is necessary to go against the lands specifically devised, a decree against Mrs. Harrington, as it regards the unpaid balance of purchase money, would be ineffectual to obtain full relief, and would necessitate subsequent proceedings against the estate of Eichelberger.    As an asset of the estate, the claim for the unpaid balance purchase

money can be enforced in this suit as against the personal representative of Eichelberger by a proper accounting, should that course become necessary for the satisfaction of the plaintiff's debt, the representatives of Eichelberger being a party. That enforcement must be dependent on the insufficiency of the assets primarily liable for such purpose, and the decree must be modified accordingly.

The remaining question is as to the right of the plaintiffs to have the devised lands in the hands of the persons claiming under Eichelberger sold for payment of the amount of purchase money due. It does not appear that Mrs. Harrington holds any special lien on the land sold to Eichelberger by way of mortgage or otherwise that is capable of being enforced in her right. If the lands are general assets for the payment of Eichelberger's debts, they must be applied in a course of administration according to all legal priorities. If such a remedy can be had in this case, it can only be obtained through an accounting of Eichelberger's personal representatives and due proceedings thereunder, to which the creditors of Eichelberger should be made parties, and for this purpose application may be made to the Circuit Court in the event that it should become necessary for the plaintiffs to resort to the specific devises. As no appeal has been taken from the order assigning dower it must stand as between the present parties.

The appeal of Mrs. Eichelberger must be denied as it regards the mode of assigning dower. It appears that the land has been sold by consent under an order of the court, and it must be assumed that the intent of such consent was that the amount for which it should be sold should be the test of the extent of dower. All other questions growing out of the actual sale of the land must be reserved for further consideration by the Circuit Court, on the due ascertainment of the rights of the various parties in respect thereof.

The decree must be modified in accordance with the foregoing conclusions, and set aside where inconsistent herewith, and the cause remanded to the Circuit Court for further proceedings in conformity herewith.

Decree modified.

McIVER, and HASKELL, A. J.'s, concurred.